Members of this Honorable Court, I'm Michael Lawrence. I represent Jack Goodman. And if I may, because every legal issue is about the story of a human being, give you the factual background of the case. Well, I think we all know the factual. We don't know all human beings, but we usually know all facts of the cases. You waited until four days before the trial to try to add the disability issues before us today in terms of exposure to sunlight? No, that's not correct, Your Honor. Jack suffers from lupus. One of the problems with lupus, especially for men, where it's worse, is that he's photosensitive, so he can't be out in the sunlight. Right, but your initial complaint, you alleged to major life activity being walking. Isn't that right? There was walking and a number of other references. I didn't draft the original complaint. He had another attorney at the time. I can't tell you how unwelcome that response is. I was once sitting in an argument in the Supreme Court of Ghana, and a lawyer gets up and was asked a question by one of the justices, and his response was, I didn't represent my clan below. And I thought to myself, it's universal. With that excuse, I didn't represent my clan below, it's universal. Well, you're still responsible for the complaint. I am, and I think that the issue was covered in the original draft, even though I didn't draft it. I take responsibility for not trying to get out of that. There was reference to his, I think it was in paragraph 19, there was some reference to going outside, lupus, I think lupus was referred to. Well, I think you can see that you have not been helpful, you, the editorial you, in describing the major life activity that you now wish to take before the jury. It's been alternately described as going outside, being outdoors in the sunlight, going outdoors in the daylight hours, unprotected from the sun. Have you decided which one it is yet? Yes, Your Honor, and I agree with you that I did conflict that issue. The major life activity was disposed of, it wasn't reached at summary judgment, it was disposed of in the motion to eliminate four days before trial. And the motion to eliminate four days before trial wanted the major life activity to be going outside during daylight hours unprotected from the sun. That's what your third proposed amended complaint said, correct? No, the motion to eliminate was by the defendants to exclude that evidence. Your third proposed amended complaint filed in response, as one of the responses to that motion, sought to amend the complaint to go to trial on going outside during daylight hours unprotected from the sun, yes? I don't think that's quite accurate, Judge, if I may. The motion to eliminate was filed before the proposed third amendment. So the defendants knew throughout discovery that whether or not he could go out on the 26th. The third amended complaint was filed on June 26th, which was the date of the final pre-trial conference, or July 6th, the date of the final pre-trial conference, and trial started July 10th. All I'm saying, Judge, is that the motion to amend, to file a third amended complaint, was filed after the defendants' motion to eliminate to exclude evidence which we had gone through during discovery, which was could he go outside in the sunlight. Let me just stop you right there. Yes, Judge. I'm sorry, by the way, I reserved five minutes for you. At the point you filed the third amended complaint, you must have believed that at best your complaint was unclear as to whether or not you had alleged in at least the second amended complaint, if not the first, that going outside in the sunlight was a major life activity. So you must have had some concern or you wouldn't have had the third amended complaint in front of the court. I'd say that's a fair statement, Judge. All right, so the third amended complaint was the motion to amend the complaint a third time was denied, and the motion in Mimini to preclude you from offering evidence on going outside in the sunlight was granted. What was the reason for the court granting that motion? The court granted the motion to exclude evidence of going out in the sunlight, and the transcript from that section of the hearing is attached to our appendix. And beginning at page five, and there the court describes the major life activity as going outside in the sunlight. He described he denied it as the proposed amended complaint because it would be futile. That was the grounds of the denial. That's right, Judge, because he was going to, the court decided that we're going to deny, we're going to grant the motion to rename. And the reason, Judge Fisher, as I understand the court's reasoning is that there wasn't really much case law on it. There was one case from Puerto Rico, and our position is that the Puerto Rico case did not do a comparative analysis, and in fact didn't address the issue of whether or not walking in the sun was a major life activity. One of my concerns here is I'm not sure, in fact I'm sure there isn't, there's no record. Arguably, I guess as a matter of pure kind of a law review argument, I could see one making the argument that going out, not being able to go outside is a substantial impact on a major life activity. But on a record that doesn't reflect what can happen to someone when they're deprived of sunlight, how can one conclude that that's a major life activity? It might bring you down a bit, but how can somebody conclude that it rises to the level that it would have to rise to under the ADA without putting something before the district court to allow for that determination to be made? The appendix is at pages 30 and 31, or two letters from doctors, and they basically said he can't go outside. He can't go outside in the sun without protective clothing and sunscreen. That's what Dr. Nyland Fisher says. So if he wears protective clothing and uses sunscreen, he can go out in the sun. That's the one letter. On page 31, the letter says the sun can activate his severe skin weakness. Yes, that's the other doctor. And so I think that's before the court, the district court, and the issue wasn't whether that is a physiological condition. Because in summary judgment, it just wasn't reached, and it was briefed. The only thing that the district court judge has to work on is a record that says if Mr. Goodman is to go outside, he has to wear sunscreen and, I guess, long-sleeved shirts, sunglasses, and a hat. That's the posture of the case when the motion of Mooney is put to district court. And there is no case that says that it is a major life activity to go outside in the sun. You agree with that statement? I'm not sure what the question is now. Are we talking about substantial limitation, or would it be a major life activity if there was a substantial limitation? Don't you have to show a major life activity before you get to the question, which may be a jury question, unless it can be decided as a matter of law as to whether there is a substantial limitation. First, there has to be a major life activity. That's why my first question to you was, because it's been either going out or one of three different things, what is your final major life activity? Because if it is as it was in your third proposed amendment complaint, there is no case that has held that to be a major life activity, correct? I agree that there's no case law either way on whether or not going outside in the sunlight is a major life activity. The courts that have addressed it at the district court level really haven't addressed what I'm raising. The major life activity would be, it could be formulated one of two ways. One, I think it amounts to the same thing, Judge, if I may. Going outside, going outdoors is the major life activity. We would argue that Mr. Goodman was substantially limited because he couldn't do that during the daylight hours. So anybody who goes outdoors, that's the major life activity? Yes. How could the species develop if human beings had not been able to go outdoors? Well, to respond to these matters, I only have two kids, but my guess is the species primarily developed because of what was going on indoors. What can I say to that? I'm not as outdoors. In the 60s it was different. I would agree with that. So going outdoors is your major life activity. Would you mind if I said the second formulation that gives you that? Sure. The second possible formulation, and I admit, I conflated the two. The second possible formulation is the major life activity is going outdoors in the sunlight. And then the substantial limitation would be that Mr. Goodman could not go out unexposed. He could be in equipment that was tinted windows and air conditioning, but he cannot stand outdoors in the sunlight unprotected or his severe skin lupus acts up and he has facial scarring, which is what the doctors referred to. Wait a minute. What are we supposed to, like, throw a dart to see which one? You're supposed to tell us which one you're invoking. Is it going outdoors or is it going outdoors in the sun unprotected? That was your proposed amended complaint. Mine would be going outdoors in the sunlight unprotected. See, the problem is when you put unprotected, you're saying that it's a major life limitation because he has to wear sunglasses, a hat, and sunscreen, which is what almost everybody does anyhow when they go to the beach. Am I missing something here? Because you did just say that the major limitation that you're invoking as part of your VA claim is that he has to protect himself from the sun with sunglasses, a hat, and sunscreen. Is that the major life limitation? That he has to protect himself from the sun? From the sun. I'm out of time to finish. Unlike the rest of us who protect ourselves from the sun at the beach, we get sunburn. When you have lupus and you're photosensitive, it has devastating effects. I understand that, and there may well be a point there, but it's kind of like nailing jelly in the wall or having a hard time pinning down exactly what the argument is. If the limitation is that he has to wear glasses, a hat, and sunscreen, boy, that's really taking the ADA to a new level, isn't it? We could say as a matter of law that that is not a substantial limitation, could we not, having to wear a hat and sunscreen. I don't know. But I think that being able to go outside is of importance. If you look at the central importance to our daily lives, it's not as vital as breathing or thinking, but it's a lot more important than many major life activities proposed that have been rejected. For example, driving. In all of those things, there's a comparable, substantially equivalent substitute. You can't drive? Fine, take a taxi, take an airplane. But for someone who cannot be exposed to the sunlight without devastating consequences, that's of importance higher than walking and so on. We saved quite a chunk of time for rebuttals. Thank you, Your Honors. Thank you. Ms. Geary? If that's your client, there may be a client behind you. He raises his hand. You might want to just see if he has a question for you. He can't address us. I explained that to him. Okay, okay. Good morning, Your Honors. My name is Donna Geary. I represent the Appellate Unity Township. And on behalf of the township, I want to thank the court for providing the opportunity to present oral argument today. I would like to address one point that was made by Mr. Lawrence. I will agree that Mr. Lawrence did not file the initial complaint in this matter, the first complaint. But there was a second amended complaint filed by Mr. Lawrence, and it's in the supplemental appendix on page one. And I'd like to bring the court's attention to page three of the supplemental appendix, where Mr. Lawrence did sign the second amended complaint. On September, I believe, of 2004, in paragraph 21 of the second amended complaint, which is mostly on what we preceded through discovery, says this condition substantially limits everyday major life activities such as walking, running, recreating, and performing a wide range of jobs that require major exertion in stamina. And, of course, there is no mention there of anything about going outside in the sun. Now, I will say, to Your Honor's point, we were always dealing with a moving target in this. We could never pin down exactly what the major life activity was, except for this vague performing a wide range of jobs and then that major exertion in stamina. He complained of his wrist and his hips. There were a lot of things. There were a lot of things. There were a lot of things of which he complained. And Your Honor is also right. We filed our motion to eliminate on June 26, and we did so because the court had set that deadline. When that motion to eliminate was filed, it was filed because at some pre-trial conference prior to that point, Mr. Lawrence had mentioned this issue of going outside in the sunlight. So we knew he was going to make this or try to make it an issue during trial, and, therefore, that's why we filed the motion to eliminate. I will say the day of the pre-trial conference, which was July, it was the day before the pre-trial conference, which was on a Friday. That Thursday, Mr. Lawrence filed the third amended complaint, and we had very little time to react to that, and our motion to eliminate had already been filed. And, of course, we argued it, and the judge framed it, and we framed the issue. We framed the issue as whether or not going outdoors in the sunlight is a major life activity. And that is what Judge Hardiman decided the motion to eliminate based on. And based on the law, we don't see how he could have found it any differently, because there is a lot of case law that—not a lot, I shouldn't say a lot. There are about four cases, one directly on point, the Aramark case, and about three others that reach this sunlight issue. And then there are the other cases. I could see someone building a record because of the impact that it could have on just even forgetting someone as sensitive and as ill potentially as Mr. Goodman, just in terms of the impact it could have on one psychologically. I could see possibly, in theory, a record being built that protracted exposure to sunlight could impact a person to such a level that it would have a major impact on the ability to function and, therefore, conflate that and make that going outside the major life activity. I guess the problem I'm having here is we're one step beyond that, because here the major life activity of going outside is combined with the requirement that it be done with sunglasses and sunscreen and a hat. And you can't separate one without the other, because he can't go outside. He has to protect himself from the sun. So if it's the protection from the sun that becomes the major life activity, that really seems to get pretty nebulous. Well, and, of course, before this appellate court, it's not a question of evidence. It's a matter of law. The reason there's no evidence is because your motion in Limine was granted and his motion to file a third proposal and then to complain was denied. One can say that perhaps had those two acts not occurred, he would then have been able to come forward with some evidence showing how he's limited, substantially limited by this impairment. If I might say, Your Honor, prior to that date, we had two years that this case was through discovery, and Mr. Warrens does mention that sun does come up sometimes in the deposition, but not in the context of what she's speaking. Well, but you had enough notice of that to file the motion in Limine. Because it was mentioned at a pretrial conference, of course. And you just said that at some of the depositions there was mention about sunlight. Well, and that was in the context of he couldn't do the job out in the sunlight. Isn't that the issue in this case? The issue is that he was claiming, he was asking to be reinstated, but there was also, before Unity Township at the time, they were aware that he was also saying he couldn't continue to work outside because of his photosensitivity. He could work outside, he just needed to be protected at some point, and then at some point he couldn't have any of that exposure. But isn't it part of the record that your client concluded that one of the reasons they weren't going to reinstate him was that being protected in a cab or in a truck with tinted windows wasn't enough for somebody who not only had to drive a truck 10 to 20 percent of the time, but at other times had to be outside as a flag man and other things? That is correct, Your Honor. It's a factual issue. So that was all part of the record? Yes. And so too was his reference to his concern about being outside in the sunlight? And so too was our evidence about that's 90 percent of the job. So for you to say that you weren't aware of this potential claim, that's not quite clear, at least from the record. It wasn't that we weren't aware of the claim. We were focused on the major life activities of walking and running and all the other things that were stated. All right, but you were concerned enough that you filed the motion in limine sometime before he filed the motion. Because it was mentioned at a pre-trial conference. Now you filed the motion in limine, and the issue is, and I think part of that is getting confused here, the court essentially said, look, I don't really need to deal with this motion in limine or the amended complaint on the substance because even if I granted it, the going outside in the sunlight as a matter of law is not a major life activity. That's correct. Okay, and essentially said it's futile. In fact, I think the court used that word futile. That's exactly right. He said it's futile. That's exactly the word. Okay, and that was a clear question of law, and that's what's before us. Correct. Okay. And there are many cases which we cite in our brief, and I just wanted to add the Toyota case, which is cited by Mr. Lourdes. The basic principle of the Toyota case talks about life's basic abilities of central importance, and going outside in the sunlight is not one of them. In fact, Your Honors, we researched every decision we could find referencing the ADA on which Your Honors participated, and we found lots of major life activities, caring for oneself, walking, seeing, hearing, even reproduction, eating, sleeping. We did not find anything close to going outside in the sunlight. So this is an entirely new issue, and, of course, we have the one case. The new is not dispositive. If the driving principle in legal analysis is whether or not the issue had ever been decided before, the law would never get anywhere because the minute we're confronted with a new issue, our response would be, well, no court has ever held that, and that's the end of our inquiry. That's correct, Your Honor. At some point, some court is the first one to hold that. That's correct. I agree. But the basic tenet of the Supreme Court tells us is it has to be a basic ability of life, and our position is going outside in the sunlight is not a basic tenet of life. I mean, people can live their lives, and they do. Mr. Goodman testified at his deposition that he drove a truck for 8 to 12 hours a day, sometimes 15 hours. He testified... Up to 16. Yes, he testified that he went to the doctors. He participated in a four-day trial. In fact, he's here today, so he does make it outside in some way. Well, here he's getting a bit confused because what he asked for was not to be excluded from going outside without the protection. He was asking for tinted windows and air conditioning. That was what he was saying would allow him, if he had that accommodation, he could then function on the job. But, of course, he was incorrect in that because our township supervisors and township employees testified that 90% of that job in the summertime is working on the road crew, laboring out in the sun, and they would have had to create a special job for him. So, at least for Mr. Goodman, based on what you just said and what he said, why would his not being able to work outside for 90% of the time not be as major of a life activity as some of the other major life activities, such as performing manual tasks or caring for oneself? Because working was never a major life activity before the trial court. It wasn't an issue. Mr. Woods had never made that an issue. But, here we're back to the motion to eliminate. He wanted to make it an issue. He didn't make that an issue, Your Honor. He didn't make it an issue because the district court said, as a matter of law, it would be futile for me to allow you to bring this in because it can't be a major life activity. My question to you is, why isn't it as comparable of a major life activity as caring for oneself or performing manual tasks? Because it is not of central importance to daily life. Well, it was centrally important to somebody who had to stand outside for 90% of his work day. But the idea, and the courts have said, the major life activity of working, a person must be precluded from doing a broad range of jobs. It's not one job. But isn't the issue here, this job, isn't the issue in this case against Unity Township, this job that Mr. Goodman was asking to be reinstated to, isn't that the issue? It's not the legal issue before this court. But it's the issue he was trying to get before this court. And he had years to get that issue before this court. You've made that point. But the question is, he was trying to get it before the court at the time of the third amended complaint in the motion to eliminate. He was trying to get the issue of being outside in the sun. Outside in the sunlight. Correct. And I am now totally confused. I thought this was a case about a failure to accommodate. The accommodation requested was, so let's forget for a second the motion of eliminating and back into that. The accommodation requested was tinted windows and air conditioning. The employer's response is, well, wait a minute. You've got to be outside 90% of your time anyhow. The accommodation you're asking for is not going to help you. Therefore, he couldn't do the job. And then we get into whether or not there's a disability. That comes into it that way. But if the accommodation requested would not allow him to reform his job, anyhow, because his job was having to be outside, does it have to get as complicated as we try to make it? No, I don't think so, Your Honor. I don't think it does. The accommodation was beyond the tinted windows and the air-conditioned cab. Yes. It was 10 to 30 hours a week light work. That's right. And no sun exposure. That's correct. Which was inconsistent with the job that he had to perform. That's correct. And the township supervisors and the road crew employees testified to that at trial. The township never gave a reason why they wouldn't reinstate Mr. Goodman, did they? Actually, in the deposition of Mr. Quinn, it's a 30B6 deposition, Mr. Quinn testified that the township supervisors talked about it and they decided that they would have had to create a new position, and they didn't feel the taxpayer should have to pay for that, to find some work for him to do within his restrictions. Because he couldn't work outside in the sunlight. That's correct. Okay. So the bottom line is Judge McKee is, I think, partially correct, at least, that this is an accommodation case, but in reality we didn't really get to that point because the township said we're not going to reinstate you because we can't accommodate you. And that's the definition of a disability. If there can't be a reasonable accommodation, then the individual is not disabled under the ADA. And we tried that on summary judgment, and there's a little bit of language in the labor contract that Judge Hardiman said, I'm not so sure I should grant summary judgment on this, and that's why it went to a trial. Let me ask you this question. I was going to ask Mr. Goodman's counsel, let's assume that Judge Hardiman said, okay, I'm going to allow you to amend your complaint and I'm going to deny your motion in Lemonet, and he can put in evidence about not being able to go outside in the sunlight and he can claim it's a major life activity. Could Mr. Goodman have prevailed? I don't believe so, Your Honor. And why? Because he wouldn't have met the definition of American with a disability. He wouldn't have what? He wouldn't have met the definition of American with a disability because there couldn't have been an accommodation that wouldn't have caused the employer an undue hardship. It all comes circled back to the definition of an American with a disability, which is part of the major life activity. Okay. Working with us. All right. Okay, thank you. Thank you, Your Honors. You need to ask this court to affirm the district court's ruling that being outside in the sun is not a major life activity, it's a matter of law. Actually, the issue, the notice of appeal, it's appealing from the denial of a motion for a new trial, and the motion for a new trial was based on a host of issues, only one of which was pressed on appeal. So I suppose it would be affirmance of the denial of a motion for a new trial if that's the way we were to go, correct? Sure, technically, yes. I agree. Thank you. Okay. Is it Lawrence or Lorenz? It's Lawrence, Judge. I just wanted to reserve some time. Mr. Lawrence, I was going to ask that question that I asked Ms. Geary to you when you came back up here. I'll restate it, but assume that the district court had denied her motion and allowed you to amend the complaint, how could have you won, even if you were able to put this evidence in front of the jury? Well, because as Ms. Geary referred, one of the factual issues that got the case past summary judgment was Judge Hardiman's determination what were the essential functions of the job. And the labor agreement title is equipment operator. And their argument all along was we can't accommodate you because you need to go out in the sun. I mean, they knew about this all. I mean, there's no doubt about that. But the fact that the label title was equipment operator doesn't mean that doesn't necessarily define what an equipment operator does. No, Judge. The testimony was quite clear, though, that 75% to 90% of the job was being a general laborer. Well, that was the testimony of the workers that they brought in, most of whom testified that they spent most of their days sticking their head outside the— Well, there's no evidence that he was 100% of the time an equipment operator. He doesn't say that. No, Judge, he does not. It's simply that the itemization of the duties of an equipment operator were mainly detailed items of operating kinds of equipment. And then there was sort of a general clause at the end, and other duties assigned. So I think in answer to Judge Fisher's question, that had the jury been able to decide was he substantially limited in the major life activity of going outside in the sunlight, which is how Judge Hardeman framed it on Appendix A-6, the jury could certainly have said yes. The only question they had was was he substantially limited in walking. But wouldn't the township have then put evidence on, as has been alluded here, look, this was not just an equipment operator job. He had to be outside in the sunlight 80% to 90% of the time. And without creating a new job, which we have no need for and which the taxpayers shouldn't have to pay for in Unity Township, there's nothing for Mr. Goodman to do. Wouldn't that have been the general synopsis of their case? I mean, how could he prevail under those circumstances under the ADA? Where the testimony of the other employees was we spend most of our time working outside? Yes. Well, I think if the jury would have agreed with that, we would have lost. Okay. But I don't know that they would have agreed that that was what the job was because Mr. Goodman could testify in detail the different jobs that they did. And most of the jobs they did cleaning up the side of these rural highway roads was using equipment. So he was inside. You're saying that factually the case wouldn't have been as clear as when I stated it to be here.  And that's the jury question, Judge. I'm finished. Thank you very much, Your Honors. Thank you very much. I know actually someone who has this. It is not... There are times when we characterize what a disease does and it doesn't sound quite as bad as the actual implementation of that. There was a case years ago with someone with irritable bowel syndrome. And to read the symptoms, everyone giggles and things, but it's a pretty disabling kind of treatment. I'm not saying this is within the ADA disability, but I don't want you or your client to think that we're making light of his physical limitation. That doesn't mean as a matter of law that he wins. I just wanted to make sure that you understood that. Yes, I do. Thank you.